IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JEFFERY JEROME DUPREE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-074 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Jeffery Jerome Dupree appeals the decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff is a thirty-two year old male born on February 28, 1983. Tr. ("R."), p. 224. He completed the ninth grade while enrolled in special education classes and has no past relevant work. R. at 40, 45. He protectively applied for Supplemental Security Income ("SSI") on September 8, 2010, alleging disability onset at birth. R. at 184-87, 224. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. at 70, 83.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 91, which was held on January 9, 2013. R. at 33-51. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Ms. Tina M. Baker-Ivey, a Vocational Expert ("VE"). Id. After the hearing, the ALJ issued an unfavorable decision. R. at 26.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since September 8, 2010, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: Borderline Intellectual Functioning; History of Alcohol and Drug Use; and Mixed Moods/Behavior Disorder secondary to Failure/Frustration (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: Due to psychological limitations, the claimant is best suited for simple, repetitive and routine tasks with relatively little interpersonal contact required. He is limited to work which does not provide easy access to alcoholic beverages or marijuana.

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including hand packer, assembly line worker, and laundry laborer (20 C.F.R. §§ 416.969 and 416.969(a)). The claimant has not been under a disability, as defined in the Social Security Act, since September 8, 2010, the date the application was filed (20 C.F.R. § 416.920(g)).

R. at 14-25.

On June 6, 2014, the Appeals Council denied Plaintiff's request for review, R. at 1-3, and the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ did not find that he qualified as intellectually disabled under Listing 12.05(C). (See doc. no. 12 ("Pl.'s Br.").) Plaintiff also argues that the ALJ's hypothetical question to the VE was incomplete and did not properly include all of Plaintiff's impairments. (See id.) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at

3

1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the

medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

### A. The Criteria for Listing 12.05(C).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(C) is met when "[There is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Thus, a claimant generally meets Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff needs to show

that the impairment "significantly limits [his] physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin, No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00(A).)

### B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Satisfy Listing 12.05(C) Because Plaintiff Does Not Have a Valid Verbal, Performance or Full Scale IQ Score Between 60-70.

Plaintiff argues the ALJ erred in finding that Plaintiff did not have a valid verbal, performance, or full scale IQ of 60-70. (Id. at 9.) The Commissioner counters that Plaintiff's IQ scores were not valid and do not prove he satisfies Listing 12.05(C). (Comm'r's Br., p. 10.) As set forth below, Plaintiff's arguments fail because the ALJ properly relied on substantial evidence in finding Plaintiff's IQ scores are not valid, see R. at 21-24, and thus the record evidence does not support the finding that Plaintiff satisfies Listing 12.05(C).

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a). It is well established than an ALJ may rely on statements by examiners that an IQ score was compromised by Plaintiff's poor effort or malingering to determine the scores are not valid. See Smith v. Comm'r of Soc. Sec., 535 F. App'x 894, 897 (11th Cir. 2013) ("[T]he record supports the conclusion that, due to her limited effort during examination . . . [the claimant's] IQ scores were not valid and underestimated her actual level of functioning"); Cammon, 2009 WL 3245458 at *10 (finding ALJ reasonably concluded claimant's IQ scores were invalid where examiner opined claimant put forth

6

limited effort); Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1205, 1208 (S.D. Ala. 2002) (affirming rejection of IQ scores because, *inter alia*, the claimant "exhibited minimal effort during the testing" and was also "malingering" in many tests); Bischoff v. Astrue, 2008 WL 4541118 (S.D. Fla. Oct. 9, 2008) (determining that Listing 12.05C was not met when there was evidence that claimant was "faking" his I.Q. score). Here, as the ALJ explained, the three IQ tests administered to Plaintiff are not valid based on the examiners' narrative statements. R. at 21-24. All three examiners questioned the validity of the IQ scores. R. at 510-14, 443, 417.

First, an examiner with the Georgia Department of Corrections evaluated Plaintiff on October 3, 2005, while Plaintiff was incarcerated at Baldwin State Prison, and Plaintiff obtained a WASI IQEQ score of 63. R. at 510-14. Because of this score, the examiner conducted an adaptive functioning skills interview in order to determine whether Plaintiff needed mental health or "mental retardation" services. Id. After conducting the interview, the examiner determined that Plaintiff did not qualify for a "diagnosis of m[ental] r[etardation]," because the examiner found Plaintiff to be functioning at a higher level than his IQ score indicated. Id.

Second, on February 17, 2008, consultative examiner Dr. Marvin L. Long administered another set of IQ tests, and determined that Plaintiff's full scale IQ was 64. R. at 443. Yet, Dr. Long opined that Plaintiff exhibited malingering in his responses, and there were issues with the validity of the test. R. at 444. Specifically, Dr. Long opined that, "you have to be careful and not accept current profile at face value . . . we got some problems on the Validity Scale . . . we would anticipate his general profile much more exaggerated than this." Id. Furthermore, Dr. Long noted problems with Plaintiff's effort level, noting that Plaintiff had a tendency to give up and that Dr. Long had a hard time keeping "[Plaintiff]

7

going on this." Id. Dr. Long's psychological impression of Plaintiff indicated that he believed Plaintiff had sufficient capacity to work at a labor level. Id. Significantly, Dr. Long remarked that he "doubt[ed] if [Plaintiff] is as limited as we see today." Id.

Lastly, on March 7, 2011, consultative examiner Dr. Michael P. Rose evaluated Plaintiff's IQ, and Plaintiff received a WAIS-IV full scale IQ score of 64. R. at 417. However, Dr. Rose opined that the result was at best, a marginally valid representation of Plaintiff's true ability because he was malingering and made an intentional effort to make any memory impairment worse than it was. R. at 417-18. Furthermore, Dr. Rose opined that Plaintiff was likely borderline intellectual functioning, suggesting that the IQ test result was invalid. R. at 418.

In summary, Dr. Long, Dr. Rose, and the Baldwin State Prison examiner all questioned the validity of Plaintiff's IQ scores. R. at 511, 443, 417. Dr. Long's report suggests that Plaintiff's IQ scores were not entirely reliable because of malingering, validity issues, and Plaintiff's effort level. R. at 444. Dr. Rose found that Plaintiff's IQ score was compromised by malingering and an intentional effort by Plaintiff to make his memory impairment seem worse. R. at 417. Dr. Rose believed Plaintiff to be borderline intellectual functioning. R. at 418. The Baldwin State Prison examiner believed Plaintiff's IQ was higher than tested, which was confirmed after Plaintiff's performance on the adaptive functioning skills interview. R. at 511. The Baldwin State Prison examiner stated his belief that Plaintiff was not intellectually disabled. Id.

Additionally, three state agency consultants filed independent assessments of Plaintiff and these assessments further indicate that Plaintiff's impairments do not meet Listing 12.05. Dr. Hollender reviewed Plaintiff's educational and prison records and did not indicate that

Plaintiff qualified under 12.05(C). R. at 542. Dr. Coyle reviewed Plaintiff's file and noted that Plaintiff was "at least of borderline intelligence," based on Plaintiff's test scores in Dr. Long's evaluation. R. at 567. State agency consultant Dr. William Gore, who reviewed the entire record in March 2011, opined that Plaintiff was borderline intellectual functioning and that on earlier IQ tests Plaintiff exhibited poor effort, deficit exaggeration, and malingering. R. at 433. See Jordan v. Comm'r of Soc. Sec., 470 F.App'x 766, 768-69 (11th Cir. 2012) (noting claimant's diagnosis of borderline intellectual functioning, which is "mutually exclusive of mental retardation" supported conclusion claimant's impairments did not meet Listing 12.05).

The ALJ gave Dr. Gore's opinion great weight, and an ALJ is entitled to give state agency consultant opinions great weight if substantial evidence supports them. Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, SSR 96-6P (S.S.A. July 2, 1996). Because substantial evidence supports the ALJ's decision that Plaintiff's adult IQ scores were not valid due to poor effort, deficit exaggeration, and malingering, Plaintiff does not meet listing 12.05(C) because he has not presented a valid IQ score between 60-70. R. at 21-24.

### C. Plaintiff Cannot Meet Listing 12.05 Because Plaintiff Does Not Have Deficits in Adaptive Functioning.

Even if one or more of the IQ tests is arguably valid, Plaintiff still cannot meet Listing 12.05 because substantial evidence supports the ALJ's finding that Plaintiff has normal functioning, rather than deficits in adaptive functioning. R. at 15. The ALJ properly cited evidence in the record that Plaintiff (1) is independent with self-care tasks, (2) shops for his

9

personal needs, (3) performs household chores, (4) attends high school football games, (5) watches television, (6) socializes with friends, including playing basketball, football, and bowling, (7) plays video games for two hours at a time, and (8) has a live-in girlfriend. R. at 15-16, 323-32, 333-41, 573-79, 435-38, 275-78.

The examiners' comments further demonstrate that Plaintiff has normal functioning. The Baldwin State Prison examiner asked Plaintiff to describe a typical day before he came to prison. R. at 512. Plaintiff responded that he would wake up at noon, eat breakfast or lunch, bathe, go to his friend's houses or just go places to have fun and drink beer, come back home to his "old lady," and watch television until it was time to sleep. Id. Dr. Long indicated in his examination that Plaintiff cleans up the house, washes the dishes, straightens up the living room, takes out the trash, spends a lot of time watching television and enjoys "shoot[ing] pool when he gets the chance." R. at 442. Dr. Rose adds that most of Plaintiff's time is spent sitting, watching television, playing video games, and listening to music. R. at 416.

Plaintiff argues that he meets the definition for mental retardation in the DSM-IV by having deficits in at least two of the following areas of adaptive functioning: (1) communication, (2) self-care, (3) home living, (4) social/interpersonal skills, (5) use of community resources, (6) self-direction, (7) functional academic skills, (8) work, (9) leisure, (10) health, and (11) safety. (Pl's Br., pp. 13-14, 16-17.) Plaintiff argues that he has deficits in the areas of communication, functional academic skills, social/interpersonal skills, and work. (Id. at 11.)

Although Listing 12.05 closely tracks the mental retardation definition in the DSM-IV, the two standards are not identical and Plaintiff must satisfy all of the specified criteria in Listing 12.05. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Cammon v. Astrue, No.

10

CIV.A.3:08-CV-0131, 2009 WL 3245458, at *11 (N.D. Ga. 2009). Because substantial evidence supports the ALJ's finding that Plaintiff does not satisfy Listing 12.05, this argument does not provide Plaintiff with relief.

### C. The ALJ Did Not Err in Finding that Plaintiff Can Perform Work in the National Economy.

Plaintiff argues the hypothetical presented to the VE was incomplete and did not include all of Plaintiff's impairments. (Pl.'s Br., p. 14.) Specifically, Plaintiff argues that the hypothetical did not include Dr. Rose's findings that Plaintiff does not have the ability to sustain focus and complete assigned tasks, handle stressful work conditions, or the skills necessary to communicate effectively with the public, coworkers or supervisors. (Id. at 14.)

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford v. Comm'r of Social Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) ("the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").

Here, the ALJ posed to the VE a hypothetical describing a claimant that is "best suited for simple, repetitive work, which requires relatively few interpersonal interactions . . . [not

11

including] jobs giving easy access to alcoholic beverages or marijuana." R. at 45-46. When the VE presented a list of qualifying jobs, including hand packer, assembly line worker, and laundry worker, the ALJ specifically clarified that the potential jobs were, "isolated, [with] relatively few interpersonal interactions and [are] repetitive, simple work." R. at 47. The ALJ did not include Dr. Rose's findings of additional impairments, including the inability to sustain focus, complete assigned tasks, handle stressful work conditions, or the skills necessary to communicate effectively with the public. Id. The ALJ rejected these limitations opined by Dr. Rose "because . . . Dr. Rose's opinion is based on the claimant's presentation, which the examiner himself found to be less than forthright, causing the undersigned to find the limitations of the claimant opined by Dr. Rose to be overstated." Id. at 22-23.

The ALJ relied on substantial evidence in the form of Dr. Rose's own conclusions as to Plaintiff's lack of trustworthiness to explicitly discredit Dr. Rose's opinion as unsupported, and properly afforded the opinion little weight. R. at 22. Furthermore, an ALJ owes no deference to the opinion of a physician who conducts a single examination and is not a treating physician. Mcswain, 814 F.2d at 619; Crawford, 363 F.3d at 1160-61. Dr. Rose was not a treating physician and only evaluated Plaintiff on one occasion. R. at 418. Consequently, the ALJ properly omitted Dr. Rose's findings of additional impairments from the hypothetical, and did not err in finding that Plaintiff can perform work in the national economy.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a

final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 17th day of November, 2015, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA